IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2005 MAR 30 PM 4: 48

| | |
|---|---|
| SABRATEK LIQUIDATING, LLC, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | Civil Action No. 04-226-KAJ |
| ) | |
| ROSS & HARDIES, an Illinois ) | |
| partnership, including corporations, ) | |
| ) | |
| Appellee. ) | |

**MEMORANDUM ORDER**

I. **INTRODUCTION**

Presently before me is an appeal by Sabratek Liquidating LLC ("Plaintiff") from a May 16, 2002 Order of the Bankruptcy Court (D.I. 11 at B-43; the "Order") which granted a Motion to Dismiss filed by Ross and Hardies ("Defendant") with respect to Plaintiff's Amended Complaint in an adversary action claiming negligence and legal malpractice. For the reasons that follow, the Order of the Bankruptcy Court is affirmed.

II. **BACKGROUND**

Plaintiff is a successor entity to Sabratek Co. ("Sabratek" or "Debtor"). (D.I. 11 at B-2.) The Amended Complaint centered on a so-called "rabbi trust"[1] (the "Trust") created by Sabratek for the benefit of certain employees, former employees, and their designated beneficiaries (the "Trust Beneficiaries"). (*Id.* at B-2.) Under the terms of the Trust, Sabratek periodically contributed funds, and the trustee would periodically make

---

[1] Rabbi trusts are, in essence, trusts whose terms track the terms of a particular trust that the IRS accepted as effectively deferring tax on certain compensation arrangements. (*See* D.I. 7 at ln. 1.)

payments to the Trust Beneficiaries. (*Id.* at B-2-3.) The terms of the Trust stated that the assets of the Trust were held subject to claims by general creditors, and that Sabratek's Board of Directors had a duty to inform the trustee if and when Sabratek became insolvent, so that the trustee could discontinue payments to the Trust Beneficiaries. (*Id.* at B-4.)

In October 1999, Sabratek announced that it would not be able to meet its payment obligations on an $85 million convertible note obligation. (*Id.* at B-5.) By early November 1999, Sabratek was preparing to file for bankruptcy protection. (*Id.* at B-6.) Sabratek filed for bankruptcy protection under Chapter 11 on December 17, 1999 (the "Petition Date"). (*Id.* at B-7.) Consequently, Plaintiff argues, Sabratek knew or should have known by Nov. 1999 that it was insolvent.

On November 16, 1999, approximately one month prior to Sabratek's bankruptcy filing, Sabratek's Board of Directors voted to terminate the Trust, resulting in the Trust's assets being distributed to the Trust Beneficiaries. (*Id.* at B-6-7.) At that time, the Trust's funds consisted of $266,786.25, of which $216,606.87 was distributed to three beneficiaries, the remaining $50,178.38 was returned to Sabratek. (*Id.* at B-7.) Prior to the vote to terminate the Trust, Sabratek sought legal advice from the Defendant law firm. (*Id.* at B-6.) The Bankruptcy Court summarized the allegations as follows:

> According to the complaint, before November 1999, the Debtor's board of directors and the defendant law firm knew that the Debtor was insolvent. Nevertheless, in November the board, after being advised by the defendant, terminated the Trust and caused about $217,000 in proceeds to be distributed to Trust Beneficiaries, rather than held subject to general creditors' claims. The defendant's failure to advise the board that the Debtor was insolvent within the meaning

> of the terms of the Rabbi Trust and that a distribution to Trust Beneficiaries would violate those terms was professional negligence. Had it not been for that negligence, the $217,000 would have remained available to general creditors. Therefore, the complaint alleges in paragraph 33, "Ross & Hardies' negligent acts and omissions, which constituted breaches of its duties to Sabratek and its general creditors, proximately caused injury to Sabratek and its general creditors."

(D.I. 11 at B-45.)

In the May 16, 2002 Memorandum Order, the Bankruptcy Court granted Defendant's Motion to Dismiss, stating Plaintiff lacked "standing to sue for the alleged injury to the creditors of the Debtor, the defendant owed no duty of care to the creditors; and the Debtor suffered no injury." (*Id.* at B-45.)

### III. STANDARD OF REVIEW

This court has jurisdiction over appeals from the bankruptcy court pursuant to 28 U.S.C. § 158(a). On appeal, a clearly erroneous standard applies to the bankruptcy court's findings of fact and a plenary review standard to its legal conclusions. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). When reviewing mixed questions of law and fact, this court will accept the bankruptcy court's finding of "historical or narrative facts unless clearly erroneous, but [will] exercise plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts." *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 642 (3d Cir. 1991) (internal quotations omitted).

## IV.   DISCUSSION

Without repeating the well reasoned analysis undertaken by the Bankruptcy Court, I note that the conclusion it reached was accurate. (D.I. 11 at B-44.) As the Bankruptcy Court held, Sabratek did not suffer any injuries from the disbursement of the Trust's assets.[2] Any damages in this case must have been borne by creditors who did not receive the benefit of the Trust's payout. (*Id.* at B-45.) Yet Plaintiff has not shown that Defendant had any attorney client relationship with the creditors, nor has Plaintiff alleged that Defendant was hired for the primary purpose and intent to benefit the creditors. (D.I. 11 at B-1-10.) The creditors thus have failed to demonstrate that they have standing to sue for the alleged negligence or malpractice committed by Defendant in advising the Debtor's Board. *See Pelham v. Griesheimer*, 92 Ill.2d 13, at 21 (1982) (holding that for "a nonclient to succeed in a negligence action against an attorney, he must prove that the primary purpose and intent of the attorney-client relationship itself was to benefit or influence the third party").

## V.   CONCLUSION

Accordingly, it is hereby ORDERED that the May 16, 2002 Order of the Bankruptcy Court is AFFIRMED.

UNITED STATES DISTRICT JUDGE

March 30, 2005
Wilmington, Delaware

---

[2] The Bankruptcy Court correctly pointed out that "The payment to the Trust Beneficiaries ... reduced the amount of the Debtor's total liabilities just as much as if the funds had been distributed pro rata among all the creditors. From the Debtor's point of view, there was no difference." (D.I. 11 at B-46.)